O'Donnell v. The New York and Harlem Railroad Company.

CATHERINE O'DONNELL, Respondent, *against* THE NEW YORK AND HARLEM RAILROAD COMPANY, Appellant.

(Decided June 3d, 1878.)

The question of contributory negligence is necessarily, almost in every case, a question of fact for the jury ; and when the jury have, under proper instruction, found upon that question, an appellate court is not justified in setting aside their verdict upon its own views of the evidence.

Before the judge charged the jury, defendant's counsel handed up nine propositions with request that they be charged. At the conclusion of the charge, which included some of the propositions but not others, the counsel stated that he had no exception to take to it, but afterwards stated that he excepted "severally to the court's not charging the specific requests before asked." *Held*, that exceptions so taken were unavailable on appeal, it being the duty of the counsel to call the judge's attention to the specific request not charged, and if it was refused to then take the exception.

An exception taken to the refusal of the trial judge to dismiss the complaint at the close of the evidence does not raise, upon appeal, any question as to the effect upon the jury of any remarks made by the judge in announcing such refusal.

APPEAL from a judgment entered upon a verdict for plaintiff, tried before LARREMORE, J., and from an order denying a motion for a new trial upon the minutes.

The facts sufficiently appear in the opinion.

*Ellott F. Shephard* and *C. M. Depew*, for appellant.

*E. Lauterbach*, for respondent.

CHARLES P. DALY, Chief Justice.—The impression left upon my mind by the perusal of the testimony in this case, is that the plaintiff, after the Third Avenue car had passed, went on towards the Fourth Avenue track, along which the defendant's car was coming, and upon seeing it approach, suddenly and probably apprehensive of danger if she remained between the two tracks, attempted in her confusion to cross in front of the defendant's car, and thereby came in contact with the horses and was thrown down beneath them.

This impression, however, is one derived from the effect upon my mind of the testimony of the defendant's witnesses,

as these witnesses were not merely the defendant's employees, but a passenger in the car and persons in the street, who testified to what they saw, and because the testimony of the plaintiff's witnesses, O'Dea and Williams, has not impressed me as favorably as the testimony of the defendant's witnesses. Appella e courts, however, are not justified in setting aside verdicts upon their impression of the evidence, when a jury under proper instruction have found otherwise. The question of contributory negligence is necessarily, almost in every case, a question for the jury; for what, under a given state of circumstances, in cases like this, of injuries from collisions with vehicles in the streets, should or should not have been done, is a matter of judgment in which the judgment of a jury may be as good, and possibly better, than that of a court.

The question in this case, however, upon the defendant's evidence was not a question of contributory negligence; for if the defendant's witnesses' statement of what occurred is the true one, there was no negligence whatever on the part of the defendant's employees, and the accident occurred through the plaintiff's negligence alone.

According to the testimony of the witnesses for the defendant, the defendant's car was coming down the Bowery slowly, under the ordinary rate of speed, but very little faster than one of the witnesses walked, and that it could not have been drawn by two horses at the rate of ten miles an hour, the rate at which the plaintiff's witnesses swore it was driven; whilst according to the two witnesses of the plaintiff, O'Dea and Williams, the car was going, at the time of the accident, at the rate of ten miles an hour or more, a rate of speed wholly unjustifiable in the public streets, and fraught with imminent danger to foot passengers undertaking to cross the public highway. But this was not all; for according to the testimony of O'Dea, when the accident occurred the driver had hold of the brake, swinging it leisurely to and fro, and that with the lines in his other hand he slapped the horses, urging them all the time and whipping them, whilst at the same time he was looking

around at the sides of the car. Not only, according to this testimony, was he driving at a furious rate of speed, but was not even looking forward in the direction in which the car was going. O'Dea testified that the car stopped as it reached the end of the small park at the junction of the Fourth Avenue and the Bowery, and then started on again at the same high rate of speed, when the accident occurred; that he saw the plaintiff walking quite rapidly across; that the car overtook her, and in his language, that "the horses mowed her right down under." The other witness, Williams, testified that his attention was called from the newspaper he was reading to look up to what he thought the exceedingly rapid way in which the car was going; that he noticed it going very fast; that he saw the driver strike the horses with a whip and then look around the corner of the car *backwards*, and that almost immediately after the witness learned that there was a woman under the car.

The plaintiff testified that she stood on the sidewalk on the westerly side of the street to watch her opportunity; that before she started from the sidewalk she looked on each side of her to see, and saw cars coming upon each side of her; but considered in the way she always did that she had opportunity and space enough to go across. That, as she expressed it, she made off when she thought she had her opportunity; that she stepped off to go across as well as she could, and *fast*, and did not know what happened until she was pulled from under the car; that for thirty years she never had a stumble before; that she stood on the sidewalk and waited in that position, to watch for a space where she could go across; that she watched on each side, and thought that she had the same space to go across that she always had.

O'Dea and Williams should be regarded as intelligent witnesses. O'Dea was a lawyer from Wayne County, in this State, and Williams was an ex-senator of this State; and both testified that they were accustomed to see vehicles in motion, and to know about their rate of speed. One of them, O'Dea, it was shown, called upon the plaintiff after the accident, and advised her to bring the suit, and got

from her a power of attorney. How far this may have affected his credibility, however, was for the consideration of the jury. If the defendant's witnesses testified to the truth, then all that these two witnesses for the plaintiff said, about the rate at which the defendant's car was driven, was pure invention, or, to use plain language, deliberate perjury. There was a conflict of the most direct and serious kind, and we cannot say that the account given by the defendant's witnesses is or ought to be controlling. That is the province of the jury, and it is evident from their verdict that they believed that what the plaintiff's witnesses said was true. The witnesses of the plaintiff and of the defendant are also in conflict upon another point. Ketchall, one of the defendant's witnesses, says that he saw the plaintiff going across the street at a very *leisurely gait*, paying *no attention to anybody*. Another of them, Beecher, swears that she walked "across" very slow to the easterly side; whilst she testified that she walked fast, and O'Dea, that he saw her walking quite rapidly across; that she started to cross the Bowery from Prince Street in a somewhat north-easterly direction.

In *Metz* v. *The Second Avenue R. R. Co.* (3 Abb. Ct. of App. Dec. 274), a case like this, of an injury from a collision with a car in a street, which was driven rapidly, it was held, that if when the plaintiff started there was abundance of time under ordinary circumstances for him to cross the street before the car reached him, it was not material that he did not look to see whether a car was approaching when he was crossing the track.

Where the plaintiff testifies that she looked upon each side before starting to cross the street and saw cars coming on each side, and considered that she had opportunity and space enough to go across, as she had always done, we cannot say, as a matter of law, that she erred in so doing. It was a matter for the consideration and judgment of the jury, for it may have been that she walked rapidly across, assuming, and justifiably, under the circumstances, that she had ample time to cross, but that the car came with such unusual, extraordinary and unanticipated speed that it struck her

witnout warning, and before she was aware, as she was in the very act of crossing the rail, the driver, at the time, having his head turned away from his horses, and towards the rear of the car. If all this existed,—and it may have existed, if what the plaintiff's witnesses swore to was true,—we cannot say any more than the court in *Metz* v. *Second Avenue R. R. Co.* (*supra*), that ordinary prudence required her to look up and down again before she attempted to step across the rail. Under the conflicting evidence upon which the question was presented, it was a matter to be left entirely to the jury, and the conclusion they arrived at should not be disturbed.

Both parties were satisfied with the judge's charge. The defendant's counsel said that he had no exception to take to it, but should ask him to charge two propositions, which the judge did. Before the judge charged the defendant had submitted nine propositions, and when the counsel declared he had no exception to take to the charge, it was equivalent to saying that he was entirely satisfied; that the judge had charged all that he wished, except the two additional propositions which he then presented, and which the judge charged. After all this the counsel excepted, as the case states, " severally to the court's not charging the specific requests before asked." Such a mode of taking exceptions brings up no error for review upon appeal. (*Walsh* v. *Kelly*, 40 N. Y. 556; *Ayrault* v. *Pacific Bank*, 47 N. Y. 570.) It has been held that a general exception to the charge, where it involves more than one proposition, or to each and every part of it, is not good; but if requests are respectively made and separately ruled upon, that the exception may be that the party excepts to the several decisions made, although he does so in a single sentence. (*Dunckel* v. *Wiles*, 11 N. Y. 420; *Caldwell* v. *Murphy*, Id. 416; *Jones* v. *Osgood*, 6 Id. 233; *Booth* v. *Swezey*, 8 Id. 276.)

As I read the charge, most of the propositions appear to have been substantially charged, although there were some that were not, and others only partially. It is difficult with one or two exceptions, when carefully contrasting the charge and the propositions, as may now be done deliberately in the

printed case, to say whether certain propositions were charged as fully as requested, and much more difficult for the judge to do this at the trial. Some undoubtedly were, and some even more so. It is evident from the counsel saying, when the charge was delivered, that he had no exception to make to it, that he was fully satisfied. It was the counsel's duty, therefore, to call the judge's attention to the specific request he had not charged, and, if he refused to charge it, take a distinct exception. It was said in *Jones* v. *Osgood* (6 N. Y. [2 Seld.] 230) that the exception taken should call the judge's attention to the points which were claimed to be erroneous; that the exception should suggest to his mind what the counsel excepting would have him hold, and wherein his charge was wrong; and this was not done by simply excepting, in the language of the exception, "severally to the court not charging the specific request before asked for." The object manifestly in taking this general exception, under the circumstances, was not from a desire to have some error corrected, which the judge had fallen into by omitting to charge something which had been requested, but simply to get in nine exceptions in this way that the defendants might have a new trial, if any of them could be shown, upon close and careful examination of the charge thereafter, to have been omitted, and to have embraced a proposition of law that was correct and applicable, if insisted upon. I shall certainly not give my concurrence to this mode of taking exceptions, unless constrained to do so by the controlling authority of the court of last resort, and I shall not therefore review these exceptions.

The defendant's counsel claims that he excepted to what the judge said, upon denying the motion for a non-suit. His exception is to the judge's refusal to dismiss the complaint, and there is, and can be no other exception. The motion was properly denied, as there was sufficient evidence when the plaintiff rested to entitle the case to go to the jury. The question put to the physician was too vague, general and uncertain. The question put to him immediately thereafter, and allowed, was the proper one, "What would be the effect

of the injuries received by the plaintiff as to their perma-
nency, judging from the three examinations which you
gave," and under it the defendants elicited all that it was in
the power of this physician to impart. The question asked
of the manager of the defendants, as to what he knew about
Allen's skill and ability as a driver, was irrelevant. Allen
himself testified to what he did, how he drove, how the acci-
dent occurred, and that he had been a driver of cars for
about eleven years. What the manager knew about his
skill and ability, therefore, was unimportant, and so was
the question as to the defendant's rule for the gov-
ernment of their drivers in regard to railroad cross-
ings. The question in the case was what took place
on this occasion. The witnesses on each side swore dis-
tinctly to what they alleged they saw, the rate of speed
at which the car was then driven :—the one that it was
driven slowly, not much faster than a man might walk ; the
other that it was driven at the furious rate, through the
streets, of ten miles an hour, or more ; a conflict so direct,
positive and irreconcilable, that the question was simply
which of the two should be believed. It was simply a case
of cross-swearing, and not a question of vague, uncertain or
insufficient evidence, which might be aided and made clear
or more certain by proof of other and more general facts,—a
question of credibility, in which two classes of witnesses
flatly contradicted each other,—where, if what the defend-
ant's witnesses swore to was true, the witnesses for the plain-
tiff swore to what they knew to be false, and this direct
contradiction could not be settled in favor of the defendants
by the kind of evidence which they wanted to give, and
which, under objection, was excluded by the court.

There is no ground for disturbing the verdict, because
the amount given by the jury ($1500) was too large. There
was conflict between the physicians who attended the plaintiff
and the physician whom the defendants sent to examine her,
both as to the extent of the injury, and whether it would prob-
ably be attended by any permanent effect upon her health.
The physician of the company was quite sure that it would

not; that it was comparatively trifling, and that she got over all the effect of it in a very short time. He testified with all the confidence and certainty that many physicians do when examined in court, and evidently did not impress the jury with the same confidence in his opinion that he had himself. He may have been entirely right, and from the extent of his medical knowledge and experience have been able to testify as positively as he did. The weight to be given to his opinion, however, was for the jury. Her own physician's opinion was different. From the account given of the condition of her health before and since the accident he thought her condition since might be attributable to the injuries received from the accident, taking into consideration her old age; that the shattered state of her nervous system, which resulted from the accident, might have continued to the time of the trial, and thereafter; that she had nervous prostration from the effect of the fright and shock, which might pass off readily or last for some time. He only attended her for a short time. The plaintiff's own testimony was that she was not even then, at the time of the trial, quite rid of the effects of the accident; that, though confined to her room but for two days, it was about six or eight months thereafter that she was able to move about in the streets; that she still continued to feel pain where she was hurt, and felt it that day coming to the court, on one side of her head, and in her head ; and that she continued to feel it ever since the accident.

The jury, no doubt, concluded that the injury had been attended by some permanent effects at her time of life, which they might do under the evidence, and this being the case, the amount given was not such as would justify an appellate court in interfering, upon the ground that it was extravagant or unreasonable.

The judgment should be affirmed.

JOSEPH F. DALY, J., concurred.

Judgment affirmed.*

* The judgment here was affirmed by the Court of Appeals June 10th, 1879.